I have two cases this morning. Both are illegal reentry cases that started as an ICE workplace raid at Mt. Pleasant Concrete in Mt. Pleasant, Iowa. In the first case, Saucedo, I'll discuss the Speedy Trial Act first and request the court adopt a RUES exception to the general rule that civil detention does not start the Speedy Trial Clock. And then I'll discuss Saucedo's collateral attack on the underlying removal order in his case. Could you adjust a little more so the microphone is closer to you? Thank you. This is an important case because the Speedy Trial Act is involved. It's also an important case because the administrative agency, ICE, in our view, is not following some of the laws and regulations that apply in these removal proceedings. And ICE hasn't been following those rules and regulations for a long time. And those rules and regulations are designed to ensure that people in removal proceedings receive due process and a fair hearing. Ultimately, we believe in this case, we're asking the court to adopt the RUES exception because the courts, the federal courts in particular, need to be skeptical about some of the information that is coming from administrative agencies. The administrative agencies, and it seems particularly prone in immigration cases, are not always forthcoming with the information that they're providing to courts. So to go back and understand why we believed the RUES exception was ripe, back in May and June of 2018, we do have to kind of put it in a bigger context and go back to what was happening in the United States at that time. This workplace raid occurred on May 9, 2018. At that time, frankly, there was chaos on the border. This was the time when people were being prosecuted for illegal entry, the misdemeanor. There were child separations. There was a lot of information that was showing up in federal courts about what immigration was doing on the border, how families were separated, what information the government was telling to federal courts. And ultimately, many federal courts ended up forcing those agencies to be transparent with those courts. Earlier in that year as well, the DOJ had a memo prioritizing the prosecution of immigration crimes, particularly on the border but also on the interior. And then in Iowa, we had a relatively large-scale joint operation between ICE and the U.S. Attorney's Office. Notably, as the government stated in its brief, the employer was the target of this criminal search warrant at Mount Pleasant Concrete. But ultimately, only a bunch of the workers were ever prosecuted or arrested, as far as we've heard. We've never gotten an answer how that happened. But as far as the record is concerned, the only people ever charged with criminal offenses from this raid were undocumented workers. So based on all those factors, we believe that a hearing was warranted on whether this was a ruse to put Mr. Saucedo in ICE custody until the federal prosecutors had enough time to get all the indictments that they wanted to. So moving to the legal issue in the Speedy Trial Act, the government's position is that there's no exception or that it's a narrow exception. So obviously, if there's no ruse exception, then that's the end of the debate. The criminal complaint in this case was filed on June 4th. The indictment was on June 20th. So we only can continue forward with our argument on the motion to dismiss if the time in civil detention in ICE custody from May 9th until June 4th is counted in the Speedy Trial Act calculation. What would be the basis in the statute? The basis on the statute... What's the basis in the statute for counting it? I understand you're invoking something called a ruse exception, but is that rooted anywhere in the text of the statute or is it a judicial creation? Can you explain that? It's essentially a judicial creation. The statute says that the indictment has to be filed within 30 days of the arrest on the charges. So essentially, arrest on the charges, as has been interpreted by the courts, means that if there's a sufficient collusion or if the civil detention is just a ruse, the person is practically being detained or arrested on the charges because it's a ruse to evade the act. And I would note that Judge Jarvie's decision on page 4, he did indicate that the parties treated the ruse exception as available, but wanted to limit its scope to only those cases where federal officials solely to evade the act have colluded with civil authorities. So from a defense perspective, how are we going to prove a ruse, especially without a hearing, as in this case Judge Jarvie denied us a chance to have that hearing? We started with the circumstantial evidence based on known historical facts. How fast did this process occur in 2018? On May 9th was the workplace raid. They issued an order to Mr. Saucedo that's called a notice to reinstate the 2008 removal order. So that means that at that time they knew he had a removal order from 2008 and said that they were going to reinstate that order. Saucedo was then held from May 9th until June 4th, allegedly for removal purposes. June 4th is the filing of the criminal indictment, which notably was also by the same ICE agent that did the paperwork on the notice to reinstate the removal order. And that's when Mr. Saucedo went into federal custody for the illegal reentry charges. And then the grand jury did finally return the indictment on June 20th. In contrast, so we had 26 days there between the workplace raid was on May 9th, 26 days later, June 4th, the criminal complaint is filed, and then we have 16 days between the criminal complaint and the indictment. How fast did this process occur back in 2008? In that case, ICE got Mr. Saucedo to sign the stipulated removal request on January 9th, 2008. On January 11th, 2008, an immigration judge signed an order for removal and the defendant was actually out of the country by January 23rd, 2008. So in that case, it only took 12 days from removal order to physical removal from the country. The bottom line on our argument is that because the ruse exception requires a showing of collusion between the government and the civil agency and purpose and intent to evade the Speedy Trial Act, we'll almost always need a hearing. In Saucedo's case, it was an error not to have a hearing on that issue to give us a chance to cross-examine the government witness on what had taken so long to see if there was any delay or we could prove any collusion or intent to evade the Speedy Trial Act. Or, alternatively, to have the government come in and explain to the federal court why the removal took so long. What was the difference in time between 2008 and 2018? It certainly looked like they were able to effectuate a quick removal when they wanted to. Is there any threshold that Mr. Saucedo would have to establish to raise the question other than just mere allegation of the passage of time? That is a good question. What sort of proof will be available in these cases if we're alleging a collusion or an intent to evade? I think in this case there was enough circumstantial evidence with the ICE acting in connection at the place of the raid. ICE doing the notice of intent to reinstate the removal order. ICE filing the criminal complaint in the federal court. In this case, I think there was enough at least circumstantial evidence. If there was nothing other than the fact that a person was put in ICE custody and then charged later with a federal offense, I don't think there would be enough evidence in those cases. The bottom line is that we do think that with the Speedy Trial Act being involved here, we do think that a hearing, especially Mr. Saucedo's case, would have been helpful. We are in the United States. It's the land of the free. The Speedy Trial Act demands that people not be detained unduly and without reason, and we think the government should be forced to explain in detail when and where people are being detained, locked up in jails, and why that's taking so long if it's for a removal purpose. Was there a basis for holding him before he was charged in the criminal case? Yes. Because he was subject to the removal order, he was, as the ICE agent determined, subject to reinstated removal as of May 9th. So he could have been removed any time after May 9th. Was there any legal requirement that he be removed immediately? Well, that is a good question. Usually people are fighting to avoid being removed. Right. Was there any reason that—I guess our ultimate answer is why did it take so long? In general, I suppose ICE can hold someone for quite a lengthy amount of time before they're required to start doing bond reviews and things of that nature. I mean, you have Zad Vadas and there's no outer limit. I suppose the person could always file a habeas petition if he was unsatisfied. I'm just wondering why—well, I wanted to understand your thoughts on that, but can you go back to the fundamental question of why there should be a so-called ruse exception at all? Because arrested on the charges, I suppose, most naturally, if not exclusively, means criminal charges. So if there haven't been any criminal charges, what is the basis for reading this into the statute? Again, I think just to kind of reiterate it, I think it really is if there's a purpose to evade the Speedy Trial Act and we could prove that, then the Speedy Trial Act becomes meaningless in some cases if there's always ways to use civil detention to gain more time to get an indictment. I mean, so really it's a fact-based question. In the particular case, was the government parking somebody in immigration to get more time to come back for an indictment? Has this issue been raised under the Sixth Amendment or only under the statute? Only under the statute as far as I'm aware. Even in other cases, you're not aware of any other cases where it's come up? In terms of a statutory construction issue? No, I'm asking whether any alien has tried to raise this under the Sixth Amendment Speedy Trial Guarantee as opposed to the statute. I'm not aware of that. Okay. Thank you. The second issue in Mr. Macias Salcedo's case is his collateral attack on the 2008 removal order. On this case, on this end of the argument, he essentially has to prove that he exhausted his administrative remedies. Judge Jarvie found that he had not exhausted his administrative remedies. We're ultimately asking the court to overturn that finding based on the obvious flaws in the paperwork. First of all, Mr. Macias wasn't told about the motion to reopen, the possibilities of that. Seeing an immigration judge, even though he signed a stipulated removal order, his notice to appear didn't have a date or location for the hearing. And the government's discovery file showed that there wasn't a certificate of service on the stipulated request for removal. And if he didn't know even which court the notice to appear was going to be filed in, which he didn't because it was filed in Minnesota, even though it should have been an Iowa case, which would have been filed in Omaha, he would have had no way to even contact the court or opposing counsel if he had a change of heart on his stipulated removal order. And then briefly on prejudice, some of the cases do presume prejudice if there's a flagrant violation of the rules and due process. And it would have been hard for us to develop a record that didn't exist from 2008. So we did the best we could with the objective factors that we had. At the time in 2008, Mr. Macias didn't have any criminal history and he would have been a good candidate for voluntary departure. So with that, I'm going to save the remainder of my time for rebuttal. Thank you. Thank you for your argument. Mr. Faith, we'll hear from you. May it please the court, counsel. Mr. Cito is asking the court to disregard credibility determination made by the judge who actually heard from the witnesses about a conversation between those witnesses that took place more than 10 years ago. And on that basis, find the judge's factual findings clearly erroneous. He's also asking the court to assume the existence of a full-blown conspiracy between ICE and the Department of Justice, told him civilly for criminal charges, despite the fact he was only held civilly for a few weeks and the lack of any actual evidence or even specifically articulated claims that would constitute such a conspiracy. The court should decline to do so and affirm the decision below. I'd like to talk about the collateral challenge issue first. It's important to remember here that the defendant bears the burden of meeting all three of the requirements of 8 U.S.C. 1326D. It's his burden to prove that he exhausted administrative remedies, was deprived of the opportunity for judicial review, and that the deportation order was fundamentally unfair. On those first two prongs, under Tamayo Baez, if an alien knowingly and voluntarily waives his right to a hearing, then his failure to exhaust administrative remedies will bar collateral attack. Here he did voluntarily and knowingly waive his rights. He has asserted that the immigration agent gave him misleading information, but the district court heard testimony on that from the agent and from Mr. Cicito and found the agent more credible. And there's nothing in the record from which this court could determine that that credibility finding was clearly erroneous. In fact, looking at the actual documentation, it supports the district court judge's finding on this point. The actual documentation shows clearly in writing that he was giving up his rights to a hearing, including his rights to assert, for instance, voluntary departure at the hearing. So it differs fundamentally from Mendoza-Lopez and a lot of the cases cited by the defendant in that this is not a case where there was an immigration hearing and then the judge failed to advise someone of their right. Here the rights advisory was in writing in the form in which this defendant voluntarily and knowingly gave up the rights. So in the absence of some evidence to show that the district court judge's credibility determination was clearly erroneous, the collateral attack should fail on prongs one and two. Even if it gets to prong three, fundamental unfairness, that requires showing not only a due process violation, but actual prejudice. Here there is no actual prejudice because there's no reason to think that he would have gotten voluntary departure or any other relief. The defendants made kind of a conclusory allegation that he would be statutorily eligible for voluntary departure, but statutorily eligible doesn't mean it's reasonably likely he would have gotten it. And that's the standard in this circuit. Is it reasonably likely that if he'd had the hearing he would have gotten relief? Voluntary departure is a weighing of positive and negative equities. The defendant has really specified no equities that would have entitled him to voluntary departure here. This is someone who had repeatedly violated immigration laws. He'd committed other crimes, all of which are on the record with no real countervailing positives that have been specified. The defendant suggests that when there's a sufficiently flagrant due process violation that you might not need actual prejudice. This court has never adopted a sufficiently flagrant exception, but even if you did, looking at circuits that have, we're talking about extreme situations where the government has basically acted in bad faith and lied to somebody to prevent them from exercising their rights. Again, here we have the credibility determination that that didn't happen. The agent thoroughly advised this person of their rights. So all that's left is there's a handful of quibbles with the form, whether it should have had a date and time, it was in Minnesota rather than Nebraska. We've argued in our briefs that those aren't really due process violations, but even if they were, they aren't particularly flagrant. This isn't the government acting in bad faith to deprive people of rights. So even if you were inclined to adopt a sufficiently flagrant exception, this would be a terrible test case to do so. And so for that reason, the collateral challenge should fail. What's sufficiently flagrant an exception to? An exception to what? An exception to the requirement to show actual prejudice. A defendant has argued, citing to some cases from other circuits, that if a violation of due process is particularly egregious, then they won't require actual prejudice. I'd like to move on to the speedy trial issue. Now, of course, it's undisputed here that the Eighth Circuit has held that a civil deportation proceeding does not trigger the Speedy Trial Act, so it does depend entirely on whether this court is inclined to adopt a ruse exception, which it has never done so before. What's the government's position on whether that's an appropriate interpretation of the statute if the facts support it? The statute seems clear on its face that we're talking about a criminal charge triggering the Speedy Trial Act, and so being held for a civil offense doesn't meet the statutory definition. And because of that, we would urge you not to import this judicially created doctrine from other circuits. Even if the facts show purposeful collusion between the civil authorities and the criminal investigators, the government would still... Our position is that it's cleaner to draw a line between a civil and a criminal charge, and until there's a criminal charge, there is no criminal detention. But even if you are inclined to adopt the ruse exception, we would urge you to also adopt the very narrow circumstances that other circuits have articulated when it applies. As the Tenth Circuit said, and Pasillas Castanon, the ruse exception is not easily triggered, and it requires that the defendant demonstrate the primary and exclusive purpose of civil detention was to hold the defendant for future criminal prosecution. And as the Eleventh Circuit stated in U.S. v. Drummond, we've placed the burden on the detainee to establish the primary and exclusive purpose. So this is an exception for extreme circumstances when there's actually essentially a conspiracy where the government's essentially circumventing the Speedy Trial Act through a kind of fraud by pretending to hold someone civilly when they're actually intending all along to prosecute them criminally. And if you look at the cases in other circuits where they found that there was a ruse, it is pretty extreme circumstances like where someone is held for five months and then an agent admits that they were being held because the prosecutors needed to gather more evidence. There's no evidence in the record here to suggest that there was a conspiracy. There's really no reason why the prosecutor would have needed more time. In this case, the defendant himself is asserting that very early on the agent was aware that there had been a previous deportation, and therefore the defendant potentially could be prosecuted for a legal reentry. So it's not clear why they would need to go to the trouble of colluding on something where an indictment could have been drawn up pretty quickly. Mr. Saucedo's argument apparently reflects a belief that in order to raise the issue, one has to have something more than the mere passage of time, which is consistent with what other courts that have adopted the ruse exception have done. And he argues that it is a reasonable inference to be drawn that the fact that the same ICE agent signed the paperwork in the civil proceeding and the criminal complaint, that that somehow is evidence of collusion and my question is, really because I know what happens in our district, I don't know what happens in your district, the question is, does the ICE officer oftentimes file or sign an affidavit supporting a criminal complaint and is it usually the same officer in your district? My understanding is that that's reasonably common because the ICE officer who originally worked on the case would also have the knowledge that's pertinent to the criminal charges. And so it would make sense to have that person do an affidavit on the charges. So I don't believe that fact would suggest collusion. And I think it's important to look at the sequence of events here. Mr. Saucedo was not specifically targeted. The warrant was for the workplace. He was not mentioned in the warrant. He was encountered there, administratively questioned, and then originally detained just because he appeared to lack lawful status. He wasn't even being detained for illegal reentry. They didn't know he had illegally reentered. It was just lack of status. And it wasn't until sometime later that day they looked at the computer files and the computer files suggested he might have illegally reentered and then they sent for the A file, which is a physical folder, which then has to be shipped in. And at some point later, we don't know exactly when, they would have reviewed the A file and that's when they would have known that he could be charged for illegal reentry. So that process would have taken some time and it wouldn't have been until they fully reviewed the physical file that they would have been sure that criminal charges were appropriate. And so I think that's additional evidence that there wasn't collusion there, that this was just working the process. And... And so you would suggest that the holding of a hearing was not required because without more it's just a mere phishing expedition? Exactly, Your Honor. I think if the defendant had come forward with specific articulated facts that, if true, would have constituted a conspiracy if they were claiming Prosecutor X was colluding with Agent Y to delay because of X reason, because the If there were those sorts of specific articulated claims, then I think a hearing might be appropriate. But here, there's just a conclusory allegation of collusion. So what was there to test? The only facts being asserted are apparent on their face. We know how long he was detained. We know that the agents at some point figured out that there was an illegal reentry here. That's all the facts that they've asserted. So what do we need a hearing for? I also think it's somewhat interesting here that after the initial order, there was a motion to clarify order where the defendant asked for a hearing on the collateral attack issue and received one. So although the defendant, in fairness, did originally ask for a hearing, I think it's interesting to say that the trial court abused its discretion by not granting a hearing on an issue that even the defendant felt apparently was so clear he didn't bother to include it in his motion to clarify. And in any event, the judge knew all of the facts. The mere fact there was a slight delay between holding him civilly and charging him criminally, and even if it's true that immigration officials very quickly learned his status, that isn't enough to prove collusion. So there was no reason to hold a hearing. We respectfully urge the court to affirm the district court decision below. Thank you for your argument. Care to make rebuttal, Mr. Bondra? Thank you, Your Honor. The only additional point that I would like to clarify in rebuttal was our motion to clarify. So initially the district court's decision denied the Speedy Trial Act ground of the motion to dismiss outright, and the decision really invited us to submit proof and evidence on the collateral attack because it related to the voluntariness of the waiver. It was clear from the district court's decision that the court was denying the request for the hearing, and there was really nothing that we could prove on that issue. The other issue with the collateral relief, the judge essentially said we would have to prove his waiver was not knowing involuntarily entered, so we requested a hearing so we could develop that issue. So we do think we preserved our arguments on appeal for both of those. Thank you. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course.